Vernal ZAHN and Velma Zahn, Appellants,

v.

ESTATE of George L. MARTIN, Deceased, Iona M. Munns, Executrix, Respondent.

No. 45366.

Supreme Court of Missouri.

Division No. 1.

Nov. 12, 1956.

Sparks & Boatman, W. H. Boatman, Woodward, Okl., J. Patrick Wheeler, Canton, for appellants.

Walter M. Hilbert, Monticello, and J. Andy Zenge, Jr., Canton, for respondent.

HOLLINGSWORTH, Judge.

This is an action brought by Vernal Zahn and Velma Zahn, nephew and niece of Elizabeth Martin, deceased, to recover in excess of $7,500 from the estate of George L. Martin, deceased, realized by him from the sale of real estate in which,

by the will of his deceased wife, he had been devised a life estate coupled with a power of sale. The trial court found the issues in favor of defendant executrix and plaintiffs have appealed. The facts are not in dispute.

As will hereinafter appear, the merits of the controversy turn upon the proper construction of Mrs. Martin's will. By her will, admitted to probate in Lewis County, Missouri, shortly after her death on August 8, 1936, she made an outright gift of all of her personal property, except a special legacy of $150, to her said husband and nominated him as executor of her estate, with a request that he be not required to give any bond as such. Her real estate was devised in the following manner:

"3. To my beloved husband, George L. Martin, I give, devise and bequeath all of my real estate, wherever situated, to have and to hold for and during his natural life, or sell and divide the proceeds, to parties as herein stated.

\* \* \* \* \* \*

"5. The farm we now have, known as Elizabeth and George L. Martin farm, and the home place now living in, are to go at the death of George L. Martin unless sold and then the proceeds to one half to Vernal Zahn and family and children, one half to Velma Zahn, and for the above grant, they shall see that the father Louis Zahn has all the care and support he will need as long as he lives."

The farm owned by Mrs. Martin and referred to in her will as the "Elizabeth and George L. Martin farm" consisted of 240 acres of land situate in Lewis County, Missouri. The "home place" owned by Mrs. Martin and referred to in her will consisted of five lots upon which was situate the residence of testatrix and her husband in the Town of Canton, Missouri. In addition to the aforesaid two tracts, testatrix owned at the time of her death 87 acres of land in Adams County, Illinois, which, as will be noted, was not specifically mentioned in Item 5 of her will. George L. Martin qualified as executor and thereafter completed administration of her estate. Plaintiffs are now and since sometime prior to the death of Elizabeth Martin have been residents of Oklahoma. Vernal Zahn, at the time of trial, had two children, both of whom were adults. Louis Zahn, the father of plaintiffs, died prior to the institution of this suit.

In 1939, George L. Martin contracted to sell the "home place" for $3,000, payable in ten interest-bearing installments, and, on August 4, 1943, having received the full purchase price, he duly executed an indefeasible deed to the purchaser of said property. In 1939, he sold the 87 acre Illinois farm, for which he received the net sum of $500. In effecting that sale, a suit was filed by George L. Martin in Adams County, Illinois, against the heirs of Elizabeth Martin, wherein the essential adjudication was that the will of Elizabeth Martin devised a life estate in the Illinois tract to George L. Martin "with power to sell and convey the same in fee simple, and without obligation or liability on the part of the purchaser thereof, to see or be obligated to see to the application, division or distribution of the moneys arising from such sale but charge the said plaintiff with the payment of the proceeds derived by him from such sale, one-half to Vernal Zahn and family and children, meaning and intending thereby the said Vernal Zahn, wife and children in equal parts, the descendants of any such deceased child to take the share such deceased child would have taken if living, per stirpes and not per capita, and one-half to Velma Zahn in fee simple."

By deed dated November 20, 1943, George L. Martin sold the 240 acre "Elizabeth and George L. Martin farm" for $7,200, payable in interest-bearing installments. That deed was recorded in November, 1954, subsequent to his death.

The total proceeds realized by George L. Martin, during his lifetime, from all of the aforesaid sales, exclusive of interest, was $9,950. The executrix of Mr. Martin's estate received an additional sum of $750, exclusive of interest, subsequent to his death. All of the aforesaid proceeds were commingled with his personal assets. Mr. Martin died testate in June, 1954. By his will he made specific bequests of $250 to each of two churches, devised certain real property to Mary Jane Munns and the residue of his real property to his adopted daughter, Iona M. Munns, and her bodily heirs. His will makes no disposition of any personal property other than the aforesaid legacies to two churches.

The theory upon which the trial court found for the defendant does not appear from the judgment. However, the record shows that defendant offered no evidence and at the close of plaintiffs' case moved for a directed verdict on grounds (1) that the action was barred by limitation and (2) "that [plaintiffs] are bound by the decision of the Illinois Court as to the interpretation of the will of the late Elizabeth Martin". And, in her brief, the defendant executrix again asserts (1) the statute of limitations and (2) the adjudication of the Illinois court in support of the judgment. Her position seems to be predicated upon the pleadings.

The amended petition, upon which the case went to trial, was filed on April 8, 1955. It set forth a verbatim copy of Mrs. Martin's will; alleged that by its terms "there was a devise of a life estate in all the real estate of Elizabeth Martin, whereever situated, to George L. Martin with the appendant power in gross to sell said real estate and pay the proceeds from such sale equally to the plaintiffs herein"; alleged the sales of real estate made by him and the date and amount of each installment of the sale price received; and alleged that George L. Martin received the aforesaid sums "as trustee of an express trust" for the benefit of plaintiffs. The prayer of

the amended petition was that the court decree the will of Elizabeth Martin to create an express trust in the proceeds of such sales in favor of plaintiffs, and that plaintiffs be awarded a judgment for the total of the sales proceeds, together with interest at six per cent on said proceeds from the date of sale.

Defendant, purporting to act under the provisions of Section 510.020 RSMo 1949, V.A.M.S., thereupon directed interrogatories to plaintiffs, which, over objection, plaintiffs were required by the court to answer. Such of the interrogatories and answers as are pertinent to the contentions made by defendant are:

"Interrogatory No. 3. In the event George L. Martin, in his lifetime sold the real estate belonging to his wife at the time of her death, is it your contention that George L. Martin would have no interest in the proceeds from the sale of said estate? Answer to Interrogatory No. 3. Yes, it is our contention that George L. Martin would have no interest in the proceeds from the sale of said real estate other than the right to receive the proceeds of sale as trustee for the undersigned, Vernal Zahn and Valma Zahn, and to divide the sale proceeds equally between them, the undersigned.

"Interrogatory No. 4. Do you contend that you were entitled to the proceeds from the sale of the real estate described in your petition at the time said real estate was sold? Answer to Interrogatory No. 4. Yes.

"Interrogatory No. 5. If the answer to interrogatory number four is yes, do you contend you were entitled to interest on the sale price from the date of said sale? Answer to Interrogatory No. 5. Yes."

After the interrogatories were answered, defendant filed answer to the amended petition, in which she alleged that plaintiffs' petition was "based upon a claim for money

alleged to be due the plaintiffs from the sale of the real estate", that the sales were entered into more than five years prior to institution of the action, and that any action to recover the proceeds of such sales was barred by limitation; and further pleading that the judgment of the Illinois court estopped plaintiffs from asserting in this action that a trust was created by the will of Mrs. Martin for the reason plaintiffs did not make such a contention in that suit and that the Illinois court "did not find that a trust was created".

 We are unable to see wherein the Illinois judgment has any bearing whatever on the issue of limitation or the rights of the parties in this action. It is evident that the only purpose of that suit was to enable George L. Martin to effect a sale of the Illinois land. The Illinois court could have no jurisdiction of a will drawn by a Missouri resident and probated in a Missouri court other than to the extent of determining title to property within its jurisdiction. The decree shows on its face that it deals solely with the tract of land in Illinois. Obviously, the object and sole purpose of the suit was to obtain an adjudication of the question of whether George L. Martin could convey title and whether payment of the purchase price to him would give the purchaser full acquittance from further liability to any of the persons entitled to any of the proceeds realized from sale of the Illinois land. The decree does not purport to adjudicate the legal status of George L. Martin under Mrs. Martin's will or when the will obligated him to distribute the proceeds from a sale of the Illinois land to plaintiffs. We hold against defendant on that issue.

 Defendant further contends that this is a suit at law to recover a money judgment against the estate of George L. Martin and, being such, the action is barred by the five-year statute of limitations. We are also convinced that neither does this contention have any substantial bearing on the question. The rights of the parties are not to be adjudged by the academic question of whether the petition states an action at law or in equity, but rather are they to be determined by the proper construction of Mrs. Martin's will. The facts are admitted and the ultimate issue is one of law, to wit: whether plaintiffs' rights under the will are barred by the five-year statute of limitations, Section 516.120 RSMo 1949, V.A.M.S. In determining that issue, we look to the will to ascertain when plaintiffs first became entitled to receive any of the sales proceeds and we disregard the conclusions of law pleaded by plaintiffs as to when they became payable. Section 509.050 RSMo 1949, V.A.M.S.; Edgar v. Emerson, 235 Mo. 552, 139 S.W. 122, 124 [4, 5]; Chouteau v. City of St. Louis, 331 Mo. 781, 55 S.W.2d 299 [1, 2]; Cameron Trust Co. v. Leibrandt, 229 Mo.App. 450, 83 S.W.2d 234, 236 [5, 6].

It is clear that Items 3 and 5 of the will devised a life estate in all of her real estate to George L. Martin and gave him power to sell and "divide" one half of the proceeds thereof to plaintiff Vernal Zahn (and family and children—of whom more later) and one half to plaintiff Velma Zahn. But the question is: Did the proceeds realized from the several sales of her real estate become due and distributable immediately upon receipt thereof or did the will not only invest Mr. Martin with a life estate in the real estate so long as he did not sell it, but also in effect provide that he have a life estate in the proceeds realized from such sales? Item 3, investing him with the power to sell and the duty to divide the proceeds, does not stand alone. It provides that he "divide the proceeds, to parties *as herein stated*". Item 5 is the next and only other item referring in any manner to the real estate devised in Item 3. By its terms, it provides that the 240 acre farm and the home place "are to go at the death of George L. Martin unless sold and *then the proceeds*" shall go to

plaintiffs in the shares stated. The clause, "*then* the proceeds", we think, means that the proceeds are "to go" (as the will states) to plaintiffs "*at the death* of George L. Martin". To so construe the will gives it a natural and sensible meaning; to construe it to mean that upon the sale of any of the real estate George L. Martin became obligated to pay the proceeds over to plaintiffs would give it a perverted and unnatural meaning. It is evident from the will, read as a whole, that testatrix wanted her husband to have the full benefit of her real estate during his lifetime, including power of sale and user of the proceeds. If the will were to be construed as contended by defendant, it is probable that no sale would ever have been made; and if Mrs. Martin did not want him freely to exercise and to benefit from the exercise of the power (which he could not, if the will obligated him forthwith to distribute the proceeds to plaintiffs), surely, she would have omitted it from her will, or at least placed some limitation upon it.

■ It follows that plaintiffs had no right to enforce distribution of the funds here in question until the death of George L. Martin, and that his death having occurred in June, 1954, this action against his estate for the recovery of the funds realized from the sales of real estate made by him is not barred by limitation, but that plaintiffs are entitled to judgment for the amount of proceeds realized from all of such sales with interest on such of said funds as were paid to him during his lifetime from the date of his death and with interest on the proceeds paid to his estate from date of receipt thereof.

■ In so holding we are not unmindful of a contention found in defendant's answer that the will does not in any event obligate George L. Martin to pay the proceeds realized from a sale of the Illinois farm to plaintiffs. Apparently, this contention is based upon the fact that Item 5 of the will omits any specific reference to that tract. However, we believe that Item 3, which devises a life estate to George L. Martin in *all* of testatrix' real estate *wherever situated* and empowers him to sell it and divide the proceeds "to parties as herein stated", must be construed to incorporate by reference the provisions of Item 5 as applying to the Illinois tract even though it is not specifically mentioned.

■ We now advert to the clause in Mrs. Martin's will giving one half of the sales proceeds to "Vernal Zahn and family and children", which, it would seem clear, vests one half interest in said sales proceeds in Vernal Zahn and his wife and children, and that, therefore, said wife and children should be made parties herein.

The judgment is reversed and the cause remanded with directions: (1) That upon motion of either of the parties to the suit the wife and children of Vernal Zahn, or the descendants of any of them that may be deceased, be made parties, including, by proper pleading of virtual representation, such children as yet may be born to Vernal Zahn; and (2) that after the interests of these parties are determined, judgment be rendered in accordance with the views herein expressed. It is so ordered.

All concur.